PERRINE v. HOTCHKISS, appellant.

*Statute of limitations — Mutual accounts — Costs on appeal.*

In a complaint were set up as causes of action numerous promissory notes made by defendant and held by plaintiff, and in the answer, promissory notes made by plaintiff and held by defendant. *Held*, that such notes did not constitute a "mutual, open and current account" within § 95 of the Code, so as to prevent a part being barred by the statute of limitations. The provision in § 95 was not intended to embrace mere cross demands, but only a mutual, open and current account that is unliquidated.

By a mutual mistake of the parties and referee, as to the date, one of the demands of the appellant which he was entitled to, was not allowed. As soon as it was discovered, respondent offered to deduct from the judgment in his favor the amount of the demand. *Held*, that the respondent should not be charged with costs of appeal by reason of the mistake.

APPEAL from a judgment for plaintiff entered upon the report of a referee. The facts appear in the opinion.

*Oscar Craig,* for appellant, cited, upon the question as to whether the demands of defendant were barred by the statute, *Helms* v. *Otis,* 5 Lans. 137; Cowen's Treat., § 733; *Tucker* v. *Ives,* 6 Cow. 195; *Kimball* v. *Brown,* 7 Wend. 325; *Chamberlin* v. *Cuyler,* 9 id. 128; *Edmondstone* v. *Thomson,* 15 id. 554; *Peck* v. *N. Y. & L. Steamship Co.,* 5 Bosw. 226; *Smith* v. *Ruecastle,* 2 Wm. Halst. 357; *McLellan* v. *Crofton,* 6 Greenlf. 309; *Knipe* v. *Knipe,* 2 Blackf. 340; *Chambers* v. *Marks,* 25 Penn. St.; *Mandeville* v. *Wilson,* 5 Cranch, 151; *Ord* y. *Ruspini,* 2 Esp. 569; *Stickney* v. *Eaton,* 4 Allen, 108; *Bass* v. *Bass,*

8 Pick. 187; *Dickinson* v. *Williams*, 11 Cush. 258; *Shattuck* v. *Shattuck*, 16 N. H. 242; *Green* v. *Ames*, 14 N. Y. 227; Blanch. on Limit. 88; *Webber* v. *Twill*, 2 Saund. 127, note *b;* Tillinghast's Ballat. on Limit. 70; Ang. on Limit. (May's Ed.) 140; *Gregory* v. *Thomas*, 20 Wend. 17; *Waydell* v. *Luer*, 5 Hill, 448; *Cole* v. *Sackett*, 1 id. 516; *Hill* v. *Beebe*, 13 N. Y. 562.

*J. H. Camp,* for respondent.

TALCOTT, J. The action is brought upon sundry notes and for money lent and advanced, and property sold and delivered. The claims of the plaintiff are specifically set forth in different counts in the complaint. To a portion of these demands the defendant set up in his answer the statute of limitations as a defense; as to others, he denied the indebtedness; and he also set up, by way of set off, claims against the plaintiff for goods, etc., sold and delivered, money lent and advanced, and claims, described as "divers bills of exchange and promissory notes." As to so much of the defendant's answer as was set up by way of set-off or counter-claim, the plaintiff, with a general denial, replied the statute of limitations. The referee has disallowed sundry of the claims of the plaintiff as being barred by the statute of limitations, and also sundry claims of the defendant upon certain notes made by the plaintiff, upon the same ground. And the principal question made on this appeal is as to whether the notes of the plaintiff held by the defendant were properly disallowed by the referee, in making up and stating the balance found due to the plaintiff.

The appellant's counsel claims that the notes held by the defendant, and thus disallowed, are protected from the operation of the statute of limitations by the ninety-fifth section of the Code, relative to a balance due on a mutual, open and current account. One answer to this is, that there appears to be no evidence that the said notes were entered in or constituted a part of any account whatever, and the referee has found, as matter of fact, that none of said exhibits (the notes in question) formed a part of a mutual, open and current account existing between the defendant and said plaintiff. The exception in the statute made by section 95, referred to, does not and was not intended to embrace mere cross demands. The items which are saved by the statute must constitute a part of an actual account, which must not only be mutual, but open and current — that is, unliquidated.

The doctrine of the authorities, as laid down by Mr. Angell, is that, even upon the liquidation and statement of a balance, the account ceases to be open within the meaning of the statute: "And thus ascertained the balance ceases to be an account, and has lost the peculiar attributes of an account; what was before an implied promise to pay what was reasonable, by such liquidation and stating of the account at once becomes an express promise to pay a sum certain." Angell on Limit., § 150, and cases cited. Promissory notes, bonds, etc., are not only evidence of a balance liquidated and adjusted, but express obligations to pay specific sums, and do not fall within the reason or spirit of that provision of law applicable to "mutual, open, current accounts." Each one of such obligations stands by itself as a separate cause of action, and as many actions may · be brought on them as there are obligations, whereas one account cannot be split up and constitute the basis of several actions. Such obligations, even if entered in an account, do not constitute a part of it, so as to be saved by the exception. Bacon's Abr., Lim. of Actions, E, 3; *Ramchander* v. *Hammond*, 2 Johns. 200; *Toland* v. *Sprague*, 12 Pet. 300.

Among the claims of the plaintiff were claims for peppermint oil, sold and delivered by the plaintiff to the defendant. At the time of the delivery of the oil the defendant had a banking office called "The Hotchkiss Peppermint Planters' Banking House." When the oil in question was delivered to the defendant, Cavendar, one of his employees, whose business it was to receive the oil, received it and gave receipts therefor, for which purpose he used blank forms of certificates of deposit for money, by filling in the blank space, left for the insertion of the amount of money deposited, with the amount of oil received from the plaintiff from time to time, so that the receipts for the oil of peppermint purported to certify that the plaintiff had deposited so much peppermint oil in the Hotchkiss Peppermint Planters' Banking House, subject to his order on the return of the certificate. And the receipts were signed by Cavendar in the place intended for the signature of the cashier of the bank, and opposite the printed word "cashier;" so that they appeared to be signed by Cavendar as cashier. Cavendar was not the cashier of the bank. And it appears pretty clearly from the evidence that these receipts were intended for no other purpose than as memoranda and acknowledgments of the amount of oil from time to time delivered by the plaintiff to the defendant. The

defendant now claims that these receipts import a bailment and not a sale, and objects that their effect could not be changed by the parol evidence.

It is not necessary to examine the question thus presented, for various reasons. The claim for the peppermint oil allowed by the referee is set out in the eighteenth count of the complaint, and is there counted upon as a sale and delivery upon a *quantum meruit,* and it is averred that the oil was reasonably worth the sum of $2.75 per pound. The answer of the defendant to the said eighteenth count of the complaint is, in substance, that he purchased the oil of the plaintiff under an agreement that he (the defendant) was to send the same to Liverpool for sale, and was to pay the plaintiff therefor the net amount realized from the sale in Liverpool, after deducting all charges and expenses, so that the only issue as to the peppermint oil which was made between the parties, by the pleadings, was not whether there was in fact a sale and delivery, but as to the price to be paid. And on this question the referee heard the conflicting evidence, and has found from it that the agreement as to the price was in fact that the defendant should pay for said oil as much per pound as any other person should get for his oil in that vicinity that season, and has fixed the price allowed, upon that basis.

Besides this, it was conceded that the defendant had sent this oil to Liverpool, and there sold and disposed of the same and converted it to his own use, long before this action was commenced. If the deposit receipts are to be taken literally as conclusive evidence of the contract between the parties, then this was an unlawful conversion of the property by the defendant; and he cannot set up his own wrong in answer to the action. In such a case the owner may, at his option, waive the tort and bring assumpsit, and since it appeared that the defendant had put it out of his power to return the property, the conversion was sufficiently evidenced without a demand and refusal. Moreover, the evidence showed that the defendant had repeatedly recognized his obligation to pay for the peppermint oil, after the conversion, and that the question between the parties was how much he should pay. It appears, therefore, to be clear that, upon the pleadings and evidence, the referee was entirely correct in holding the defendant liable for the oil as for oil sold and delivered.

The foregoing views cover the questions of law which have been

presented for our consideration. As to the findings of fact complained of, we are unable to discover but what there was evidence before the referee sufficient to authorize them. And, besides, the case does not purport to state the whole evidence, in which case we must presume that the evidence was sufficient to sustain the findings.

On the argument of the appeal it was conceded, by both counsel, that the defendant's exhibit No. 24 was disallowed by the referee through the inadvertence of the referee and the counsel for both parties, it having been assumed to be dated in 1860, instead of 1861, its true date. When the defendant's counsel prepared the case this exhibit was stated to be dated May 7, 1860, with a statement that the exhibit was to be inserted. When the case came to be printed as settled, and the exhibit inserted, the mistake as to the date of the exhibit was discovered, and the respondent's counsel, before the appeal was brought to argument, by a notice in writing, offered to allow the defendant the amount called for by this exhibit, with interest from May 7, 1860, by deducting the same from the judgment. The offer was not accepted. The error in applying the statute of limitations to the note in question was not specifically pointed out in the exceptions to the report. And it is apparent that the counsel for both parties, as well as the referee, assumed the note to have been dated in 1860 instead of 1861. It was agreed, on the argument of the appeal, that the amount of the note, viz., $100, with interest from the 7th of May, 1860, should be deducted from the judgment in order to rectify the error. We think, under the circumstances, the respondent should not be charged with the costs of the appeal on account of this mistake.

Judgment modified by deducting therefrom $100, with interest from May 7, 1860 ; as thus modified, affirmed with costs of appeal to respondent.

*Judgment accordingly.*